### THE ELIZABETH MAERSK.

(District Court, E. D. Louisiana, New Orleans Division. May 30, 1919.)

No. 15992.

1. SEAMEN ⊂⊃21—WAGES—DEDUCTIONS OF FORFEITURES BY FINES—INVALID FINES.

In a libel by seamen against a steamship for wages, the controversy arising from the master imposing fines under the Danish law, which he deducted from the wages, where the fines were not imposed in conformance with sections 102, 103, of the Danish law relating to seamen, on which the master relied, the seamen not being given full opportunity to present their defense, the fines were invalid and could not be thus collected.

2. SEAMEN ⊂⊃21—WAGES—FINES—FIXING BY DANISH CONSUL.

In a libel by a seaman for wages, where the defense was that the Danish consul had assessed a fine upon a seaman for disregard of chief officer, held, that the Danish law relied upon by the vessel does not give the consul a right to judge the seaman's conduct and fix the amount of the fine.

3. SEAMEN ⊂⊃23—WAGES—ADVANCE—PAYMENT OF WAGES.

An advance payment of wages to seamen, made upon their employment for the purpose of reimbursing a boarding house keeper, is illegal under Seamen's Act Cong. March 4, 1915, § 11 (Comp. St. § 8323).

Libel by Axel Anderson and others against the steamship Elizabeth Maersk. Decree for libelants.

W. J. & H. W. Waguespack, of New Orleans, La., for libelants.
Terriberry, Rice & Young, of New Orleans, La., for claimant.

FOSTER, District Judge. This is a libel by three seamen against the Danish steamship Elizabeth Maersk, for wages.

It appears that libelants Karl E. Hjelmberg and David Anderson were shipped at Savannah, Ga., on February 3, 1919, at wages of $75 per month, for a voyage to New Orleans and further. On the day the said libelants were shipped they were each given an advance of $7.50, and on February 8th they were each paid $3 on account of their wages. While in the port of Savannah the said libelants were given permission to go ashore to see the consul for the purpose of

getting American passports. They were unable to secure the passports at the time and returned to the ship at about 12 o'clock in the day. Later, on the same afternoon, they again went ashore, but without permission, and remained away until 7 o'clock the next morning.

Libelant Axel Anderson was shipped at Savannah on February 8, 1919, at the same wages and for the same voyage as the other two. While at sea, on the morning of the 22d of February, he had an altercation with the chief officer regarding the ringing of the fog bell on the forecastle. The sailor admits· that he objected to the ringing of the bell and told the mate "he ought to be rung between the eyes." The mate puts it a little stronger and says that in addition the sailor called him a "codfish."

For their absence without leave in Savannah the captain imposed a fine on Hjelmberg and David Anderson of one-fourth of a month's pay, or $18.75 each. For the disrespect shown the chief officer by Axel Anderson he was fined $15 by the Danish consul in New Orleans.

The vessel arrived in New Orleans on February 22d and on that day the captain discharged and paid off all the members of the crew in full, except libelants. After deducting the fines and advances and payments made in Savannah, the captain tendered them the balance of their wages admitted due, respectively, $20.75 for Hjelmberg and David Anderson and $17.50 for Axel Anderson. They offered to receive the amounts tendered on account, but payment of anything was refused, unless they signed receipts in full.

[1] It is contended by respondent that the contract with the men is governed by the Danish law, and therefore the deductions from their wages were legal. Certain articles of the Danish maritime law, sanctioned by His Majesty Christian IX, on the 1st day of April, 1892, are in evidence. The pertinent portions are as follows:

Section 74: "The seaman engaged is bound to present himself for service on board at the time fixed by the master and must not afterwards leave the ship without permission."

Section 77: "Every one of the crew shall behave himself decently, soberly and peacefully, and carefully observe the directions for the maintenance of order and discipline on board. He shall show respect towards his superior officers, receive their orders attentively and by proper and distinct answers show that they are understood."

Section 102: "Should any of the crew be guilty of any of the under mentioned breaches of duty or of discipline, penalties may be imposed by the master consisting in forfeitures of wages according to the following scale, viz.:

"(1) Not exceeding half a month: If the man behaves disrespectfully towards his superior officers or shows disobedience in the service; * * *

"(3) Not exceeding a quarter of a month: If he without permission goes on shore, if he comes back the same day; and not exceeding half a month, if he returns later."

Section 103: "Previous to exercising the authority of punishment, assigned to him under section 102, the master shall, in the presence of two of the best men on board, hold an examination over the person who has committed the fault, not, however, till twelve hours have elapsed since the misconduct has been committed, unless there be special reason for holding the examination earlier. Whatever is stated there, together with the punishment the master inflicts, should be entered in the logbook, if such is kept on board, and otherwise be recorded in writing; what is entered or written down shall

be read before the guilty and the witnesses, and its correctness be attested by the signatures of those present. Should the master not have observed these instructions, the decision with reference to the deduction in the wages is of no effect."

On the other hand, it is contended by the libelants that the Danish law has no application to the case, as the men were shipped at an American port for a voyage to another American port, and, in the alternative, that as the captain failed to comply with the provisions of section 103 of the Danish law, the fines imposed are inoperative and of no effect in any event.

[2] The master in imposing the fines did not conform to the procedure outlined in section 103 of the Danish law. He simply entered the fines in the logbook and notified libelants. He professes ignorance of all the facts upon which he imposed the fines. The only evidence he had was that of the chief officer. It was his duty under the law of his country to hold an inquiry and give the men an opportunity to state their side of the case. Had he done so, it might have resulted in his acquitting Hjelmberg and David Anderson of intention to absent themselves without leave. They had permission to go ashore in the morning, and they might well have assumed that the permission extended to the time necessary to complete the very important business they had to attend to. It might also have resulted in an apology and disclaimer of intention to be disrespectful on the part of Axel Anderson to the advantage of discipline on board the ship, or it might have resulted in the imposition of the smaller and more just fines as to all three. Furthermore, the Danish law does not seem to give the counsel the right to judge of the conduct of the men and to fix the amount of a fine. The fines imposed were wholly inoperative under Danish law. It is unnecessary, therefore, to decide whether their imposition was governed by the Seamen's Act or the Danish law.

[3] With regard to the advances made in Savannah the $3 paid the men was legal and should be deducted, but the $7.50 paid them in advance on the very day they signed was illegal. Section 11 of the act of March 4, 1915 (38 Stat. 1164, c. 153 [Comp. St. § 8323]), makes it unlawful to pay any seamen any part of his service in advance, and applies the law to foreign vessels in American ports. The seamen testify that this advance was for the purpose of reimbursing a boarding house keeper at Jacksonville, Fla., from whence they had been sent to Savannah to join the vessel. It is this very class of advances that the Seamen's Act is designed to prevent, and admitting that in this case the money was due the boarding house keeper for board and lodging actually furnished the men, the law nevertheless strikes them with nullity. There is no doubt that the Congress had ample power to apply the law to a foreign vessel in an American port. Respondent imposed an impossible condition to the tender of the balance of the wages and therefore can derive no benefit from it.

There will be a decree in favor of Karl Hjelmberg and David Anderson for $47 each, and in favor of Axel Anderson for $32.50;

libelants to receive interest at the rate of 5 per cent. per annum from judicial demand, February 27, 1919, until paid. Respondent to pay all costs.